20889

In the Matter of Edward McIver LEPPARD.

(252 S. E. (2d) 143)

February 15, 1979.

*Per Curiam:*

This attorney disciplinary proceeding was commenced against the respondent Edward McIver Leppard by the filing of a complaint before the Commission on Grievances and Discipline in August, 1977. It alleged as follows:

"2. On information and belief, the Respondent committed the following acts, which singularly, and/or in conjunction, amount to misconduct under paragraph 4 of the Rule of Disciplinary Procedure:

"(a) Respondent undertook a legal matter for Judith Cullen in May of 1975 and refused to proceed with such matter;

"(b) Respondent undertook legal matters for Mrs. Lula P. Broome, arising out of automobile accidents which occurred on December 29, 1971, and on July 28, 1973, and refused to proceed with either matter;

"3. As a result of the foregoing allegations, the Respondent has engaged in conduct which tends to pollute the Administration of Justice, or to bring the courts or the legal profession into disrepute, has violated the canons and code of professional responsibility."

The panel, which heard the case, filed its report, finding that the conduct of the respondent brought ". . . the Courts or the legal profession into disrepute." It recommended that the respondent be privately reprimanded.

The matter is now before us for review and for final adjudication. In *Burns v. Clayton,* 237 S. C. 316, 117 S. E. (2d)

,00 (1960), we held that the final responsibility in disciplinary matters rests upon this court.

The respondent was charged with refusing to proceed with litigation he had contracted to process. The panel and the executive committee did not find the respondent guilty of *refusing* to proceed, but we need not technically determine whether he refused to proceed, neglected to proceed, or failed to proceed, since the results to the clients are basically the same. It is sufficient to say that he did not perform his duty, in violation of Rule 5 of our Rules on Disciplinary Procedure. That rule defines misconduct as:

"B. Acts or omissions by an attorney, . . . which violate . . . the Code of Professional Responsibility as is in effect and adopted by the Court, whether or not the act or omission occurred in the course of an attorney-client relationship."

"D. Conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute. . . ."

DR6-101(A) of the Code of Professional Responsibility provides that:

"A lawyer shall not:

"(3) Neglect a legal matter entrusted to him.

## THE CULLEN CASE

Ms. Judith Cullen, a teacher in the Chesterfield County Schools, was involved in an automobile collision on Sunday, May 4, 1975, resulting in property damages to her automobile and personal injuries. She promptly employed the respondent as her attorney and signed a contract evidencing that employment. The panel found that: "Ms. Cullen made numerous attempts to communicate with the Respondent and asked a Circuit Judge, who was a family friend, to help get her a settlement through the Respondent. With the exception of the response to the judge and an explanation being made that there was need for the final physician's report and

that Miss Cullen had not been released from her doctor, there appears to have been no response by Respondent. However, when Respondent was advised on May 11, 1976, that Miss Cullen was released from her doctor, Respondent soon thereafter made an attempt to get the final report from the doctor. The Respondent did not advise Miss Cullen of his efforts in her regards and subsequently, on October 26, 1976, Miss Cullen retained counsel in Columbia and the matter was later settled by her new attorney."

Her desperation is reflected by her letter to the respondent on October 18, 1976, wherein she said:

"For the past year and a half I have repeatedly attempted to elicit some response from your office regarding the status of my case. I have accomplished everything you have requested of me, yet you have not replied to correspondence nor returned my telephone calls. Your silence has never been satisfactorily explained.

"Therefore, I hereby and immediately discharge you as my attorney. . . ."

Newly employed counsel promptly processed the claim and settled the case.

## THE LULA P. BROOME CASE

Mrs. Broomé was involved in two accidents, one on December 19, 1971, and the other on July 28, 1973. She employed the respondent to represent her in both of these matters. It would appear that liability in the first collision was questionable, but that Mrs. Broome was most probably entitled to recover in the second accident. At the time of the hearing of this matter (October 6, 1977), the respondent had not instituted an action relative to either collision. It is inescapable that the respondent has failed to perform his duty relative to the processing of Mrs. Broome's 1973 collision claim. We give respondent the benefit of the doubt in concluding that perhaps no action should have been commenced growing out of the 1971 collision.

## LENDING OF FUNDS TO MRS. BROOME

The respondent was not initially charged with improperly lending money to Mrs. Broome, but at the hearing it developed that he did advance about $1,200 to her to assist her with personal needs. Evidence of these loans was taken by the panel, subject to objection of counsel for the respondent. Counsel for petitioner moved to amend the complaint to include an allegation of impropriety in the advancement of money by a lawyer to his client. It was agreeable to counsel for the claimant that the respondent be given ample time to meet the issue. The panel allowed the amendment to the complaint and found that the advancing of funds was in conflict with DR5-103(B), of the Code of Professional Responsibility. Rule 24 of the Rules of Disciplinary Procedure permits amendments to complaints and provides that: ". . . Any party affected by such amendment shall be given reasonable opportunity to meet any new matter presented thereby." We are of the opinion that the respondent had ample opportunity to meet the issue and that the finding of a violation of the Code was warranted.

DR5-103(B) provides as follows:

"While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses."

Failure of attorneys to keep their clients advised probably results in more complaints filed with the Commission on Grievances and Discipline than any other one delict. Certainly, there can normally be no excuse for counsel's failure to reply to his client's letters and to return telephone calls. Once an attorney accepts employment, he has a duty to keep in touch with his clients such

that they may be advised of the progress of the case. This duty is over and above that of diligently pursuing the matter entrusted to the attorney.

Under our rules there are four possible sanctions when one has brought the courts and the legal profession into disrepute: (1) permanent disbarment, (2) indefinite suspension, (3) public reprimand, and (4) private reprimand. In our view, the accumulation of violations described hereinabove warrants and requires more than a private reprimand. Accordingly, the respondent, Edward McIver Leppard, stands publicly reprimanded for his conduct bringing the courts and the legal profession into disrepute.

RHODES and GREGORY, JJ., dissent.

GREGORY, Justice (dissenting):

I respectfully disagree with the sanction imposed by the majority. Both the Panel and the Executive Committee unanimously recommended private reprimand as the appropriate sanction. I concur in their recommendation.

### The Cullen Case

Respondent advised Ms. Cullen at their first conference in May 1975 of the importance of her physician's final report. Notwithstanding this advice, Ms. Cullen did not inform respondent until May 1976 that she had been released by her physician in January 1976. Shortly after receiving this information from Ms. Cullen respondent wrote the physician requesting a copy of the physician's final report. The report had not been received from the physician by October 1976, when Ms. Cullen discharged respondent and secured alternate counsel.

Ms. Cullen's newly employed counsel brought suit in December 1976 and negotiated a favorable settlement in May 1977.

Respondent refrained from bringing suit so that he could have the benefit of Ms. Cullen's physician's final report. This was not unreasonable.

Respondent's neglect in this matter consists mainly of his failure to communicate with his client.

The Panel report characterizes respondent's representation of Ms. Cullen as "involving an extreme degree of procrastination" which "did not amount to refusal to proceed with representation as claimed in the Complaint." The Executive Committee voted unanimously to accept this characterization of respondent's conduct. I agree with the Panel and the Executive Committee that procrastination not amounting to refusal to proceed with representation amounts to neglect within the meaning of DR6-101(A)(3) and merits a private, not a public, reprimand.

### The Lula P. Broome Case

While I agree with the majority that respondent failed to perform his duty to prosecute Ms. Broome's case, I also agree with the Panel and the Executive Committee that respondent's failure to act did not amount to a refusal to act. As with the Cullen case, this is an instance of procrastination amounting to neglect within the meaning of DR6-101(A)(3) and merits a private reprimand.

The record reflects that respondent made monetary advances to Ms. Broome during a time when she was in acute financial need. These funds were used by Ms. Broome to pay her electric bill, to purchase oil for heating, to make house payments and for other necessaries. A secretary in respondent's office also advanced personal funds to Ms. Broome on two occasions. I agree with the Panel and the Executive Committee that "the advancement of funds while in conflict with DR5-103(B) was not in a manner which was offensive to the spirit and reason for the rule."

I would remand to the Executive Committee for imposition of a private reprimand.

RHODES, J., concurs.